Miriam J. **WOLF**, Plaintiff,

v.

Martin S. **ACKERMAN** et al., Defendants.

No. 69 Civ. 771.

United States District Court,
S. D. New York.

Nov. 20, 1969.

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff; Howard L. Jacobs, New York City, of counsel.

Harold L. Young, New York City, for defendants Martin S. Ackerman, Perfect Film & Chemical Corp. and E. Eugene Mason.

Debevoise, Plimpton, Lyons & Gates, New York City, for defendant-trustees Cary W. Bok, Derek C. Bok, Robert D. Patterson and Mary Curtis Zimbalist; Peter W. Williamson, New York City, of counsel.

Lord, Day & Lord, New York City, for defendants Harry C. Mills, Milton S. Gould, G. B. McCombs, Moreau D. Brown, Walter S. Franklin, Thomas S. Hyland and Lawrence R. Kessel; John W. Castles, New York City, of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for Curtis Publishing Co.; Robert A. Meister, New York City, of counsel.

## MEMORANDUM

LASKER, District Judge.

Defendant Curtis Publishing Company ("Curtis") moves to transfer this action to the United States District Court for the Eastern District of Pennsylvania pursuant to Section 1404(a) of Title 28, U.S.C. Plaintiff counter-moves to stay the prosecution of Bok v. Ackerman, a suit pending in the Eastern District of Pennsylvania, described below. The motions are discussed seriatim.

1. Motion to transfer.

This suit is one of several brought in the aftermath of the now terminated control by defendant Martin S. Ackerman ("Ackerman") and defendant Perfect Film & Chemical Corp. ("Perfect") of defendant Curtis and its well known publications, including the Saturday Evening Post. The action is a stockholder's derivative suit on behalf of Curtis and its wholly owned subsidiary Saturday Evening Post Co. ("Post Co."). Jurisdiction is established by Section 27 of the Securities Exchange Act of 1934, as amended (15 U.S.C. § 78aa). The complaint alleges violations of Section 10(b) of the Act (15 U.S.C. § 78j(b)) and Rule 10b–5 thereunder.

The elaborate complaint contains nine "counts," each of which describes a different way in which Ackerman or Perfect, or both, allegedly "looted" Curtis alone or Curtis and one or more of its subsidiaries.[1] The relief sought in-

---

1. It is alleged that Ackerman, being president of Perfect, was on April 22, 1968 named president of Curtis by Curtis' board of directors, and that Perfect agreed to loan Curtis $5,000,000; that, although these acts were claimed to have

cludes an accounting for all profits, rescission of sales of Curtis assets to Perfect, and appointment of a receiver for Curtis and Post Co.

At the time the motion to transfer was argued, two suits were pending in the United States District Court for the Eastern District of Pennsylvania in relation to the subject matter and one in the New York State Supreme Court, New York County. The New York state court action has since been stayed pending "final determination of the actions in the Federal Courts."

Of the two cases pending in the Eastern District of Pennsylvania, one (Bok v. Ackerman) was, like the present action, a stockholder's derivative suit brought on behalf of Curtis. The other (The Curtis Publishing Company v. Perfect Film & Chemical Corp.) was brought directly by Curtis after its board of directors was no longer under the dominance of Ackerman. Curtis now moves to transfer the proceeding herein to the Eastern District of Pennsylvania. Before discussing the merits of the motion, it is to be noted that the Bok and Curtis cases have been consolidated in the Eastern District of Pennsylvania and are untried *sub judice* before Judge Higginbotham. Since the argument of the motion which forms the basis of the present opinion, substantial progress has been made towards settling the consolidated cases before Judge Higginbotham.

■ The interrelationship between the instant suit and the Pennsylvania litigation is a primary factor in determining both the motion to transfer and the motion to stay. Counsel on both sides are in dispute as to whether there is any substantial difference between the scope of the Wolf complaint on the one hand and the scope of the Bok and Curtis on the other. In particular, plaintiff's counsel contends that the Pennsylvania suits do not cover allegations contained in Counts 2, 3, and 5 of the Wolf complaint.[2] Bearing in mind

been taken for the reason of improving Curtis' financial condition, they were in fact taken to put Perfect and Ackerman in a position where they could and did "loot [Curtis] of all of its valuable assets through fraud and deceit"; that Ackerman caused Curtis to transfer its subsidiaries Curtis Circulation Co., National Magazine Service, Inc., Moore-Cottrell Subscriptions Agencies, Inc., Keystone Readers Service and Curtis Distributing Company of Canada to Perfect for an inadequate consideration; that the members of the board of directors of Curtis other than Ackerman were clearly negligent in acquiescing in his and Perfect's behavior; that Ackerman caused Curtis to sell its publications *Ladies Home Journal* and *American Home* to Downe Communications, Inc., for an inadequate consideration, and that the purchase price is still unpaid; that Ackerman caused Curtis to form the Saturday Evening Post Co. ("Post Co.") and to transfer to this subsidiary its three remaining magazines, *Saturday Evening Post, Holiday* and *Status;* that Post Co. then entered into an agreement to purchase a stock interest in LIN Broadcasting Co., of which Ackerman was president, and that the price paid for the stock was excessive and served no corporate purpose of Post Co. or Curtis; that in November 1968, Ackerman caused Curtis to issue to Perfect for inadequate consideration warrants to purchase the stock of the Post Co., this being for the sole benefit of Perfect and Ackerman; that in June 1968, Ackerman induced Time, Inc., to amend an existing agreement with Curtis so that circulation services were purchased from a subsidiary of Perfect rather than printing services from Curtis, thereby diverting profits from Curtis to Perfect; that Ackerman in May 1968 caused Curtis to transfer to Perfect, allegedly as repayment of loans made by Perfect to Curtis, assets of Curtis worth far in excess of the amount outstanding on the loans; that in October 1968, Ackerman caused Curtis to withdraw certain Pension Funds of Curtis, which were used for the benefit of Perfect and Ackerman rather than for Curtis; that Ackerman caused Curtis and Post Co. to purchase from Perfect services which were unnecessary, and caused Post Co. to transfer to Perfect for an inadequate consideration the right to publish *Holiday* and *Status.*

2. The specific contention made by plaintiff's counsel in his letter of October 17 to the court is that Counts 2, 3 and 5

the critical nature of a determination as to whether the scope of the Bok and Curtis complaints is as broad as that of the complaint before me, I have carefully analyzed and compared them. I conclude that, although the language and method of expression understandably, if not inevitably, vary between the Wolf and the Pennsylvania complaints, nevertheless, for the purposes determinative of this motion, the substance and scope of the Pennsylvania complaints is as broad as that of Wolf, and the Pennsylvania complaints encompass all the transactions covered by the Wolf complaint.

\* \* \*

Title 28, U.S.C. § 1404(a), provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In the instant case there is neither doubt nor dispute that the case "might have been brought" in the Eastern District of Pennsylvania. As stated in Wyndham Associates v. Bintliff, 398 F. 2d 614, 620 (2d Cir. 1968):

"Section 27 of the Securities Exchange Act provides that suit to enforce liabilities under the Act or any rule or regulation thereunder may be brought in any district wherein any act or transaction constituting the violation occurred."

Here it is clear that acts or transactions constituting the alleged violations occurred in the Eastern District of Pennsylvania. The question therefore is whether the convenience of parties and witnesses and the interest of justice warrant transfer of this action to the Eastern District of Pennsylvania or whether it should remain for trial in this court.

Determination of the convenience of the parties is made with relative ease in this case in view of the fact that, although originally opposed by some of the defendants, all the defendants now favor the transfer, and the only party opposing the motion is the plaintiff. It is of at least some importance in this connection to note statistically that there are 15 defendants who either request or acquiesce in the request that the case be transferred, and that of the 15 defendants four (Ackerman, Perfect, Gould and Kessel) reside or have their principal place of business in New York, one (Hyland) resides in Connecticut, one (Cary Bok) resides in Maine, one (Derek Bok) resides in Massachusetts, and one (Mills) is described as a resident of New York and Florida. The remaining defendants reside in Pennsylvania, primarily in the Philadelphia area.

While the cases have given substantial weight to a plaintiff's choice of forum (e.g., Zorn v. Anderson, 263 F. Supp. 745, 749 (S.D.N.Y. 1966); Oil & Gas Ventures, etc. v. Kung, 250 F.Supp. 744 (S.D.N.Y. 1966), that presumption is not so rigidly applied in the case of derivative suits on behalf of corporations. As the Supreme Court stated in Koster v. Lumbermen's Mut. Co., 330 U. S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) (a stockholder's derivative action):

" \* \* \* where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."

See also Schlusselberg v. Werly, 274 F. Supp. 758, 763 (S.D.N.Y. 1967); Miller

---

of the Wolf complaint are not covered by the stipulation outlining the proposed settlement in the Bok and Curtis cases. However, since the stipulation of proposed settlement by its terms disposes

of all claims under the Bok and Curtis complaints, an analysis of the stipulation must necessarily involve an analysis of the complaints themselves.

v. Steinbach, 268 F.Supp. 255, 283 (S. D.N.Y. 1967); Gold v. Scurlock, 290 F. Supp. 926 (S.D.N.Y. 1968).

■ In light of the policy expressed by the Supreme Court in *Koster,* supra, and the fact that here the plaintiff is apparently the only party whose convenience would be adversely affected by the transfer, while 15 other parties residing in a variety of states support the motion and would be convenienced in one manner or another, I find that the convenience of the parties favors granting the motion.

At the request of the court, counsel have submitted information as to the witnesses they propose to call, and it is clear from this documentation that the parties themselves will play the central role as witnesses in the case. This fact is highlighted, for example, by the statement of plaintiff's counsel that Ackerman will be "without doubt the key witness." Since the structure of this case is such that the parties themselves will be the primary witnesses, it appears that the "convenience of the witnesses" would also be served by transferring the action to the Eastern District of Pennsylvania. If these considerations were not sufficient to determine the matter, although it is believed that they are, the balance would certainly be tipped in favor of transferring the action to the Eastern District of Pennsylvania in view of the facts that the consolidated Bok and Curtis cases are pending there before Judge Higginbotham; that the Bok case was brought prior to the instant action; that substantial progress has been made in the settlement of those actions; that such proposed settlement will be submitted for approval to Judge Higginbotham, who will have thoroughly familiarized himself with the details of the cases, so that a settlement of the present action will be facilitated if one can be reached, or a trial of the issues if a settlement cannot be reached. In this connection it is to be noted that the proposed Pennsylvania settlement agreement provides for dismissal not only of the actions pending in the Eastern District of Pennsylvania, but also "all other litigation arising out of the transactions set forth in said civil actions." I have observed above that, in my opinion, the transactions set forth in the Bok and Curtis cases are the same as those set forth in the Wolf complaint. But whether I am correct or not, it is proper that the disposition of the Wolf case should be acted upon in the jurisdiction in which the Bok and Curtis settlement is being supervised and approved. If the plaintiff before me is satisfied that the proposed settlement covers her complaint, there will, of course, be no problem. If, on the other hand, plaintiff argues that the proposed settlement does not cover certain counts in her complaint, she clearly could make known her objections to the proposed settlement in the Philadelphia forum and thereby assure that the allegations purportedly set forth in her complaint are included in the final settlement. In the light of these considerations, sound judicial policy suggests emphatically that the Wolf matter should be *sub judice* before the court which approves the settlement of the sister cases.

As Judge Bryan has pointed out (Rodgers v. Northwest Airlines, Inc., 202 F.Supp. 309, 313 (S.D.N.Y. 1962)):

> "The benefits and advantages to all parties in having the related actions considered in one jurisdiction under one judge are obvious. Pre-trial proceedings can be conducted more efficiently, duplication of time and effort can be avoided and the benefit to witnesses and to the parties calling them in having them attend only once at one location is plain. Furthermore, to require defendants to relitigate the issue of liability in a number of forums would be vexatious and would not serve the ends of justice."

See also Axe-Houghton Fund A, Inc. v. Atlantic Research Corp., 227 F.Supp. 521 (S.D.N.Y. 1964).

■ A final additional reason for supporting the transfer of the present

case to the Eastern District of Pennsylvania is that plaintiff seeks the appointment of a receiver for Curtis. The appointment of a receiver, if there is to be one, should be made by a court located in the community from which the receiver will be chosen; and it would be considerably more logical that, if a receiver is to be appointed for Curtis, he should emanate from Philadelphia, the center of Curtis' activities. Johnson v. Baker, 81 F.Supp. 563, 565 (S.D.N.Y. 1948).

2. Motion to stay the Pennsylvania action.

■■ The motion to stay the case of Bok v. Ackerman is predicated upon the assertion that Bok will not adequately represent and protect the interests of the stockholders of Curtis. To enjoin the prosecution of an action pending in another United States District Court before an able judge would be to impose a drastic remedy which I am unwilling to invoke without the clearest possible showing that such relief is warranted. The papers submitted in support of the motion to stay the Bok action do not sustain that high burden of proof. The allegations of the affidavit in support of the motion are based on the highly debatable theory that because Mr. Bok did not take affirmative action against Ackerman during the period of Ackerman's dominance, he "acquiesced" in Ackerman's acts and has by that acquiescence demonstrated his lack of qualification to represent the interests of the Curtis stockholders. Aside from the fact that such theorization is too speculative to support the issuance of a stay against litigation pending in another district, the affidavit of Ernest R. von Stark in opposition to the motion casts the most serious doubt upon the contentions made by the plaintiff. Specifically, Mr. von Stark, who has acted as attorney for the plaintiff in Bok v. Ackerman since the filing of the complaint, states:

> "Contrary to the allegations in the affidavit of Paul L. Ross, Esquire, submitted in support of the Motion for Stay, Cary W. Bok did not 'approve of and acquiesce in all of the transactions complained of in the *Wolf* and *Bok* actions * * *' (affidavit, paragraph 5). In fact, Mr. Bok abstained from voting in favor of the appointment of Messrs. Ackerman and Mason as Directors of The Curtis Publishing Company and abstained from voting upon the election of defendant Ackerman as President of The Curtis Publishing Company. The first transaction challenged in the Complaint (paragraph 17) is the sale of the circulation and subscription companies by Curtis to defendant Perfect on May 17, 1968. Mr. Bok did not attend the meeting of the Board of Directors of Curtis on May 17, 1968 and, accordingly, did not vote in favor of the challenged transaction. Moreover, Mr. Bok did not attend any meeting of the Board of Directors of Curtis subsequent to May 17, 1968 and submitted his resignation as a Director on July 24, 1968. Because of his concern over the propriety of actions taken by defendants Ackerman, Mason and others with respect to The Curtis Publishing Company, Mr. Bok caused the retention of special counsel in October of 1968 to investigate the transactions entered into by defendant Ackerman in behalf of Curtis, and, on February 10, 1969 (prior to the institution of the suit in the instant case) authorized the filing of a stockholders' derivative suit in the United States District Court for the Eastern District of Pennsylvania, seeking substantially the same relief as is claimed in the instant case.

> "Bok v. Ackerman has been vigorously prosecuted and will be vigorously prosecuted in the future both by the original plaintiff and by The Curtis Publishing Company. Moreover, consideration is now being given to amending the Complaint in that action to assert additional causes of action against the defendants. The simultaneous prosecution of the instant case and Bok v. Ackerman, with the consequent duplication of depositions and other pre-trial proceedings, would in-

terfere with the orderly prosecution of Bok v. Ackerman; would be a substantial inconvenience to the litigants and witnesses; and would unnecessarily burden this Court."

No refutation of Mr. von Stark's affidavit has been made, and in the light of the considerations expressed above I find that it would be inappropriate to grant the requested stay.

Accordingly, for the convenience of the parties and witnesses and in the interest of justice, the motion for transfer of the instant case to the Eastern District of Pennsylvania is granted. The motion for a stay of Bok v. Ackerman pending in the Eastern District of Pennsylvania is denied.

Settle order on notice.